UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

J ASON A LAN B ROWN,

            Plaintiff,                    Case No. 2:21-cv-56

v.                                            Honorable Paul L. Maloney

D ANA B OTT et al.,

            Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## **Discussion**

I.    **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Marquette Branch Prison (MBP) in

Marquette, Marquette County, Michigan. Plaintiff sues Corrections Program Director Dana Bott, Corrections Officer Unknown Allen, Corrections Officer Unknown VanAcker, Lieutenant Unknown Baldini, Warden Erica Huss, Sergeant W. Torongo (initially named as John Doe #1), and PREA Coordinator Unknown Party #2.

Plaintiff's complaint asserts a litany of retaliatory acts by Defendants, all of which started when he threatened to file a PREA complaint on Defendant Bott for staring at Plaintiff's "man-boobs." Specifically, Plaintiff alleges that he was transferred to MBP level V for an institutional-need work detail in July of 2018. Plaintiff states that on May 13, 2019, he was removed from his work detail for disciplinary reasons. Plaintiff had filed several grievances on his work supervisor, Librarian Bomer, regarding misconduct tickets he received and his removal from his work detail. On June 5, 2019, Defendant Bott called Plaintiff to his office to review the grievances. Plaintiff questioned Defendant Bott's role in reviewing the grievances because Defendant Bott was not Librarian Bomer's supervisor and had a clear bias. Defendant Bott became enraged with Plaintiff and balled up his fist and beat on the desk. Plaintiff immediately left the office. The library officer escorted Plaintiff back to his seat in the law library. Plaintiff filed a grievance on Defendant Bott.

Approximately one week later, Defendant Bott came to Plaintiff's cell to review a grievance. Plaintiff was washing his white laundry and was not wearing a shirt. Plaintiff weighed well over two-hundred and seventy-five pounds and was uncomfortable with his body, including his "man breasts." Plaintiff noticed Defendant Bott staring at his chest in a "voyeuristic manner," and told Defendant Bott that he felt uncomfortable. Plaintiff recalled that upon seeing heavy prisoners in the past, Defendant Bott had made comments such as "Look at the boobs on that guy." Defendant Bott was aware that Plaintiff had been sexually harassed/assaulted in the past and was

submissive. Plaintiff attempted to cover himself and asked Defendant Bott to stop staring at his chest. When Defendant Bott continued to stare, Plaintiff stated that he wanted to file a PREA grievance. Plaintiff asked for a PREA grievance form, but housing staff would not supply him with one. Plaintiff then used a standard grievance form, but labeled it as a PREA grievance.

The next day, Plaintiff received an insolence misconduct, in which Defendant Bott stated, "Prisoner said he would write a PREA on me and I felt degraded." Plaintiff pleaded not guilty because he believed he had a right to act as he did. Plaintiff had a hearing conducted by Defendant Baldini, who told Plaintiff that the Warden and PREA Coordinator had instructed all staff to write insolence tickets on prisoners who threatened staff with PREA grievances, hoping that it would decrease the PREA filings. Plaintiff was found guilty and received seven days loss of privileges.

Plaintiff states that the housing unit staff were all aware that he had been waiting for a medical transfer for ACL surgery and that he had already been transferred out of MBP twice for examinations at the University of Michigan. Plaintiff also states that he had details for an ACL brace, a patella brace, and an ace wrap. On June 30, 2019, Defendant Allen moved Plaintiff to the second gallery despite Plaintiff's protest that he had a medical detail and could not climb stairs. Defendant Allen told Plaintiff that second gallery was where he put prisoners who filed PREA grievances. Plaintiff was not given any assistance in moving his legal property and had to carry it one handful at a time while holding onto the handrail with his other hand in order to keep the weight off his right leg. Defendant Allen laughed at Plaintiff throughout this ordeal.

Plaintiff states that the inmate who previously occupied the cell he was given had spent the prior two days throwing feces at his neighbor, who had responded by throwing feces back. As a result, the walls, bars, and mattress all had fecal matter on them. Plaintiff requested

3

cleaning supplies, but was told that Defendant Allen had ordered the request be denied. Plaintiff filed a grievance regarding the move, which he labeled as a PREA grievance. However, the grievance was labeled as a regular grievance and rejected as complaining about policy. Plaintiff states that this was false, since there were a dozen open cells on the base unit at the time that Plaintiff was moved.

Two days later, Plaintiff incurred an additional injury to his knee while in the yard. Plaintiff was issued crutches, ice, and an ace bandage, and was moved back to base unit. Plaintiff's property was not moved with him and he did not receive it until late the next evening, which prevented him from brushing his teeth and washing his leg with soap and water. When Defendant Allen returned to work the next day, he told Plaintiff that as soon as he was off crutches he would be moved back to second gallery.

On July 5, 2019, Defendant Allen shook Plaintiff's cell down while Plaintiff was in the shower and threw Plaintiff's eyeglass cleaning cloth and fingernail clippers in the toilet. He also placed Plaintiff's rusty bottom foot locker on Plaintiff's bed, placed his sheets and blanket on the floor around his toilet, threw his toothbrush on the floor, knocked Plaintiff's television off it's stand so that it was hanging by the power cord, and poured water on Plaintiff's legal work and typewriter. Defendant Allen later told Plaintiff to "keep filing PREAs bitch." (ECF No. 1, PageID.10.) Defendant Allen said that Defendant VanAcker had told him about Plaintiff's most recent grievance regarding the move to second gallery. Plaintiff filed another grievance, labeled a PREA grievance, and placed it in the mailbox addressed to the PREA Coordinator. However, the grievance was reviewed as a regular grievance and was rejected as challenging policy.

On July 6, 2019, Plaintiff asked Defendant VanAcker for a PREA grievance form. When questioned, Plaintiff explained that Defendant Allen kept retaliating against him for the first

4

PREA grievance Plaintiff had filed on Defendant Bott.  Plaintiff then told Defendant VanAcker that he was making a formal complaint to him about a PREA violation and expected Defendant VanAcker to report this to his supervisor pursuant to policy.  Defendant VanAcker refused to give Plaintiff a PREA form, stating that he thought Plaintiff's complaint was appropriately raised in a regular grievance.  Later that day, Defendant Torongo reviewed an insolence misconduct on Plaintiff, which had been written by Defendant VanAcker for threatening to file a PREA grievance on Defendant Allen in order to degrade him.  Plaintiff was given seven days loss of privileges.  Later that day, Defendant VanAcker told Plaintiff that he did not mean for Plaintiff to lose privileges for seven days, but hoped that Plaintiff would be dissuaded from filing future PREAs.  Plaintiff was told to pack up for a transfer the next day.

On July 8, 2019, Plaintiff was transferred to IBC.  Plaintiff subsequently mailed MBP PREA Coordinator and MBP Grievance Coordinator Caron multiple times, seeking information on his PREA grievances against Defendants Bott and Allen.  However, officials at MBP claimed that they had not received any of the grievances.  Plaintiff copied originals and sent duplicates, but they were also lost.  Plaintiff asked IBC Grievance Coordinator Robinson and PREA Coordinator Moyer for assistance and they advised him to file step II appeals on each grievance as both PREA grievances and as regular grievances.  Plaintiff states that also filed step III appeals on each grievance.

Plaintiff states that Defendants violated his rights under the First Amendment when they continually retaliated against him for filing PREA grievances.  Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

II.     **Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

5

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

III. **Retaliation**

According to Plaintiff, the retaliation against him began when he threatened to file a PREA grievance on Defendant Bott for looking at his "man boobs." Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

An inmate has a right to file grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741).

7

However, the right to file grievances is protected only insofar as the grievances are not "frivolous." *Herron v. Harrison,* 203 F.3d 410, 415 (6th Cir. 2000). "Abusive or manipulative use of a grievance system would not be protected conduct," *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012), and an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory," *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002). As the Supreme Court held in *Lewis v. Casey*, 518 U.S. 343 (1996), "[d]epriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions." *Id.* at 353 n.3.

The Court notes that PREA grievances are the appropriate course of action where there has been sexual abuse or harassment of a prisoner by a prison employee. Mich. Dep't of Corr. Policy Directive 03.02.140 ¶¶ Q, S, T. Sexual abuse of a prisoner by an employee includes:

1. Contact between the penis and the vulva or the penis and the anus, including penetration, however slight;

2. Contact between the mouth and the penis, vulva, or anus;

3. Contact between the mouth and any body part where the employee has the intent to abuse, arouse, or gratify sexual desire;

4. Penetration of the anal or genital opening, however slight, by a hand, finger, object, or other instrument, that is unrelated to official duties or where the employee has the intent to abuse, arouse, or gratify sexual desire;

5. Any other intentional contact, either directly or through the clothing, of or with the genitalia, anus, groin, breast, inner thigh, or the buttocks, that is unrelated to official duties or where the employee has the intent to abuse, arouse, or gratify sexual desire;

6. Any attempt, threat, or request by an employee to engage in the activities described in numbers 1 through 5 of this section;

7. Any display by an employee of their uncovered genitalia, buttocks, or breast in the presence of a prisoner and

      8.      Voyeurism by an employee.

*Id.* at ¶ S.

      Sexual Harassment includes:

1. Unwelcome sexual advances, requests for sexual favors, or verbal comments, gestures, or actions of a derogatory or offensive sexual nature by one prisoner directed toward another prisoner; and

2. Verbal comments or gestures of a sexual nature to a prisoner by an employee, including demeaning references to gender, sexually suggestive or derogatory comments about body or clothing, or obscene language or gestures.

*Id.* at ¶ T.

      In this case, Plaintiff claims that Defendant Bott stared at his chest in a voyeuristic manner. However, according to the Cambridge Dictionary, voyeurism is the activity of getting pleasure from secretly watching other people in sexual situations or, more generally, from watching other people's private lives. *See* https://dictionary.cambridge.org/us/dictionary/english/voyeurism. Plaintiff's description of Defendant Bott's conduct does not match such a definition. In addition, although Plaintiff states that he had previously heard Defendant Bott make comments about "boobs" on other prisoners, Plaintiff does not claim that Defendant Bott made any such comments to him. Nor does Plaintiff assert that Defendant Bott attempted to make any physical contact with him, or make any unwelcome sexual advance. The conduct about which Plaintiff complains does not meet the definition of either sexual abuse or harassment by a prison employee. Therefore, any PREA grievance filed by Plaintiff asserting such conduct was or would have been frivolous. Therefore, Plaintiff did not engage in protected conduct prior to receiving the insolence misconduct written by Defendant Bott or the move from base unit to the second gallery ordered by Defendant Allen.

9

Plaintiff later filed grievances regarding the move to second gallery and the shakedown of his cell, both of which he labeled as PREA grievances, reasoning that this was appropriate because the conduct all stemmed from a desire to retaliate for Plaintiff's original PREA grievance. Plaintiff also sought to obtain a PREA grievance form from Defendant VanAcker to file against Defendant Allen under the same rationale. Defendant VanAcker explained to Plaintiff that a PREA grievance was not the appropriate remedy, and wrote an insolence ticket on Plaintiff. The Court notes that Plaintiff claims that all of the alleged retaliatory conduct appears to be based on a desire to punish him for filing the original PREA grievance on Defendant Bott.

For the reasons stated above, Plaintiff's proposed PREA grievances were frivolous. Plaintiff's allegations about the move and the shakedown have nothing to do with the type of conduct grievable in a PREA grievance. Further, Plaintiff's allegation that Defendant Van Acker told him that such allegations do not belong in a PREA grievance—and issued an insolence ticket when Plaintiff insisted—is also frivolous. Therefore, it cannot be the basis for a retaliation claim. Consequently, Plaintiff's complaint is properly dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing

fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated: May 6, 2021                                   /s/ Paul L. Maloney
                                                     Paul L. Maloney
                                                     United States District Judge