UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JASON ALAN BROWN #408842,

       Plaintiff,

                                 Case No. 2:21-cv-56

v.

                                 Hon. Paul L. Maloney

DANA BOTT, *et al.*,

       Defendants.

_____/

## OPINION AND ORDER

Plaintiff Jason Alan Brown, a prisoner under the control of the Michigan Department of Corrections ("MDOC"), proceeding pro se, filed this civil rights suit against Corrections Program Coordinator Dana Bott; Corrections Officers Wayne Allen and Brandon VanAcker; Lieutenant Chet Baldini; Sergeant William Torongo; and Warden Erica Huss under 42 U.S.C. § 1983.  (ECF No. 1.)  Brown claims that while he was incarcerated at the Marquette Branch Prison ("MBP"), Defendants violated his First Amendment rights under the federal Constitution and participated in a civil conspiracy against him.  Defendants moved for summary judgment under Federal Rule of Civil Procedure 56(a).  (ECF No. 97.) The magistrate judge issued a report and recommendation ("R&R"), recommending that the Court grant Defendants' motion.  (ECF No. 118.)  Brown filed objections.  (ECF No. 119.) Before the Court are Brown's objections to the R&R.[1]

---

[1] Under Rule 72 of the Federal Rules of Civil Procedure, the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the

# I. BACKGROUND

## A. Factual Background

In 2019, Brown was an inmate within the MDOC at the MBP.  (Compl. ¶ 1.) Defendants were employed by the MDOC and worked at the MBP.  (*See id.* ¶¶ 4, 20, 23, 37, 40.)

On June 12, 2019, around 1:00 p.m., Defendant Bott stopped by Brown's cell on the first floor to review a grievance Brown filed against an MBP librarian.  (Bott Dec. ¶ 5, ECF No. 98-4; Compl. ¶ 8; Video, Ex. G, ECF No. 98-8.)  At 12:56 p.m., the surveillance video shows Bott walking down a row of cells.  (Video, Ex. G, 12:56:46-12:56:57.)  He is holding the grievance Brown had filed against the librarian in his left hand and has his right hand in his jacket pocket.  (*Id.*)  He then approaches Brown's cell at 12:57 p.m.  (*Id.*)  At this time, Brown was in his cell and was allegedly washing his "white laundry" without a shirt on. (Compl. ¶ 9.)  The video shows Bott standing in front of Brown's cell, taking his right hand out of his jacket pocket, and squaring his body towards the front of Brown's cell.  (Video, Ex.G, 12:56:56-12:57:00.)  Bott then puts both of his hands on the grievance, tilts his head down, and begins looking at the paper for about fifty seconds, appearing to be reading the grievance.  (*Id.* at 12:57:00-12:57:50.)  Bott raises his head and looks through the bars of Brown's cell for a moment.  (*Id.* at 12:57:50-12:58:00.)  This goes on for about thirteen more seconds, Bott tilting his head to read from the grievance and occasionally tilting his head up. (*Id.* at 12:58:00-12:58:13.)

---

recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.  Fed. R. Civ. P. 72(b)(3).

At 12:58:13 p.m., the video shows Brown sticking one of his hands through the bars of his cell. (*Id.* at 12:58:13-12:58:18.)  The video shows him pointing at the grievance Bott is holding; his finger is literally on the paper for about five seconds. (*Id.*)  From 12:58:18 p.m. to 1:00:35 p.m., the video shows the same exchange of events: Bott looking down at the grievance, reading from the grievance, Brown sticking his hand out and pointing at the grievance, and Bott occasionally tilting his head back up to talk to Brown. (*Id.*)  Around thirty seconds after 1:00 p.m., Bott then leaves the area—a total encounter of three minutes and thirty-five seconds. (*Id.* at12:57:00-1:00:35.)

Brown alleges a more nefarious encounter.  He asserts that when Bott approached his cell, Bott began staring at his chest "in a voyeuristic manner." (*Id.* ¶ 10.)  Brown alleges this made him uncomfortable as he didn't have a shirt on and was already self-conscious about his body. (*See id.* ¶¶ 9-10.)  According to Brown, Bott had ridiculed other heavier-set inmates, too, making comments like "look at the boobs on that guy." (*Id.* ¶ 11.)  So when Bott approached Brown's cell and allegedly began staring at Brown's exposed chest in a "voyeuristic manner," Brown claims he was uncomfortable. (*See id.* ¶¶ 9-11.)  To the point that Brown attempted to cover himself, told Bott to stop staring, and eventually placed a sheet over the bars of his cell. (*Id.* ¶¶ 13-15.)

Brown allegedly informed Bott that he was going to file a PREA grievance against him if he didn't stop staring. (*Id.* ¶¶ 15-16.)  Brown claims he yelled for facility staff and said, "PREA, PREA, please get away from me." (*Id.* ¶ 16.)  Bott allegedly told Brown if he filed a PREA against him, Bott would "write so many tickets" that Brown would be sure to stay in Level V. (*Id.* ¶ 17.)  Bott then walked away from Brown's cell. (*See id.*)

The next day, Bott issued Brown an insolence misconduct ticket.  (*Id.* ¶ 19.)  The basis for the ticket was that Brown threatened to file a PREA grievance "to harass and degrade me."  (*See id.*; Misconduct Tickets, Ex. 5, ECF No. 46-6, PageID.300.)  Brown, about a week later, filed a PREA grievance against Bott regarding this encounter (Grievance MBP 190629466).  (*See* Compl. ¶ 18; Farley Aff., Ex. 4, ECF No. 46-5, PageID.297.)

Brown was later subject to a hearing concerning Bott's insolence misconduct ticket before Defendant Baldini.  (*See* Compl. ¶ 19; Misconduct Tickets, PageID.299.)  Brown "pled not guilty."  (*See* Compl. ¶ 19.)  During the hearing, Brown alleges that Baldini told him that Warden Huss had instructed all staff to write insolence tickets on prisoners who threatened staff with PREA grievances.  (*Id.* ¶ 21.)  Baldini found Brown guilty of misconduct because Brown purportedly "admitted to threatening P.C. Bott with a PREA grievance." (Misconduct Tickets, PageID.299.)  Baldini sanctioned Brown with the loss of privileges for a week.  (Compl. ¶ 20.)

Brown claims that Defendant Allen also retaliated against him for threatening and actually filing Grievance MBP 190629466.  (*Id.* ¶ 22-30.)  According to Brown, his cell was on the first floor because of a pre-existing knee injury.  (*See id.*)  But around June 30, 2019, Allen forced Brown to a second-floor cell.  (*Id.* ¶ 23.)  Brown alleges that Allen knew he had a knee injury, which made it difficult for him to travel up and down the stairs of the unit. (*See id.* ¶ 24.)  Brown avers that he was not given any help in moving his property to the new cell.  (*See id.* ¶ 24-28.)  Allen allegedly laughed at Brown throughout the move.  (*Id.*)  What's more, alleges Brown, his new second-floor cell was covered with "feces," it was on "the walls, bars and mattress."  (*Id.* ¶ 28.)  Brown alleges that he requested cleaning supplies, but

4

Allen denied his request. (*Id.* ¶ 29.) Brown filed a grievance regarding the move, which he labeled as a PREA grievance (Grievance MBP 19090136527B). (*Id.* ¶ 30.) The grievance, however, was construed as a regular grievance and rejected. (*Id.*)

Around July 5, 2019, Allen "shook down" Brown's cell. (*Id.* ¶ 35.) Brown alleges that Allen put his eyeglass cleaning cloth and fingernail clippers in the toilet. (*Id.*) He also placed Brown's footlocker on his bed and his sheets, blanket, and toothbrush on the floor. (*Id.*) Additionally, Allen knocked over Brown's television and poured water on Brown's legal work and typewriter. (*Id.*) Allen allegedly told Brown, "keep filing PREAs bitch." (*Id.* ¶ 36.)

A day later, Brown claims that Defendant VanAcker issued him an insolence misconduct ticket for threatening to file a PREA grievance against Allen for retaliation. (*Id.* ¶ 38.) Brown alleges that after Allen "shook down" this cell, he asked VanAcker for a PREA grievance form to file against Allen; VanAcker refused to give Brown a PREA grievance and told him a regular grievance would do. (*Id.* ¶¶ 38-39.) VanAcker issued Brown an insolence misconduct ticket because Brown told VanAcker that he "was planning on filing a PREA against his buddy and coworker and that he felt that [Brown] meant it to degrade his coworker." (*Id.* ¶ 40.) Defendant Torongo reviewed the insolence misconduct ticket issued by VanAcker and found Brown guilty of misconduct. (*Id.*) Torongo sanctioned Brown with the loss of privileges for seven days. (*Id.*) Brown alleges that VanAcker later approached him and said he hoped Brown would be dissuaded from filing future PREAs. (*Id.* ¶ 41.)

## B. Procedural Background

Brown, proceeding pro se, filed his verified complaint on March 24, 2021, against Defendants.  On May 6, 2021, this Court dismissed Brown's complaint for failure to state a retaliation claim because Brown failed to allege that he engaged in protected conduct. (ECF No. 6.)  This Court found that the threatened grievance Brown allegedly made against Bott for staring at his chest was frivolous, and raising frivolous grievances does not count as protected conduct.  Brown appealed that decision to the Sixth Circuit Court of Appeals. (ECF No. 11.)  The Sixth Circuit reversed this Court's decision, finding that Brown did allege a plausible retaliation claim since the threatened grievance against Bott and other grievances were not frivolous.  (ECF No. 23.)  The Sixth Circuit further held that this Court "failed to recognize" Brown's Eighth Amendment claim and conspiracy claim.  (*Id.*)

On December 19, 2023, Defendants filed a motion for summary judgment, arguing that Brown failed to exhaust his administrative remedies for his First Amendment retaliation claims and Eighth Amendment claim.  (ECF No. 45.)  This Court dismissed Brown's Eighth Amendment claim for failure to exhaust but denied Defendants' motion for failure to exhaust the First Amendment retaliation claims.  (ECF No. 57.)

On January 27, 2025, Defendants filed another motion for summary judgment, arguing the merits of Brown's First Amendment retaliation claims and civil conspiracy claim. (ECF No. 97.)  Then, on March 5, 2025, Brown filed a motion for leave to file a proposed witness list.  (ECF No. 109.)  The magistrate judge issued the R&R, recommending that the Court grant summary judgment on all claims and deny Brown leave to file a proposed witness list.  Brown filed objections.

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of demonstrating that there is no genuine dispute of material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is genuinely disputed when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249 (citing *First Nat'l Bank of Ariz. v. City Serv. Co.*, 391 U.S. 253, 288-89 (1961)).

Summary judgment is generally not an opportunity for the Court to resolve factual disputes. *Anderson*, 477 U.S. at 249. The Court "must shy away from weighing the evidence and instead view all the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021). That said, in *Scott v. Harris*, the Supreme Court recognized that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." 550 U.S. 372, 380 (2007).

### B. Qualified Immunity

"Qualified immunity spares officers from 'the time, expense and risk of money-damages actions' unless they violate clearly established constitutional rights." *Moore v.*

*Oakland Cnty.*, 126 F.4th 1163, 1167 (6th Cir. 2025) (quoting *Hogans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 508 (6th Cir. 2012)).  To overcome the defense, the claimant must show that "(1) the officers violated a 'constitutional right' and (2) the right was 'clearly established.'"  *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  When multiple officers are involved, the Court must assess each officer's entitlement to qualified immunity separately.  *Smith v. City of Troy*, 874 F.3d 938, 944 (6th Cir. 2017) (per curiam).  So Brown bears the burden of demonstrating both that Defendants' conduct violated one of his constitutional rights, and that the right was so clearly established at the time that "every reasonable official would have understood that what he [was] doing violate[d] that right."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

## III. ANALYSIS

The magistrate judge recommends that this Court grant Defendants' motion for summary judgment on each of Brown's claims.  (R&R 42.)  Those claims being (1) First Amendment retaliation claim against Bott; (2) First Amendment retaliation claim against Baldini; (3) First Amendment retaliation claim against Allen; (4) First Amendment retaliation claim against VanAcker; (5) First Amendment retaliation claim against Torongo; and (6) 42 U.S.C. § 1983 civil conspiracy claim against Warden Huss.  (*Id.*)  The magistrate judge recommends that this Court grant summary judgment to Defendants on each claim because Brown either failed to prove a prima facie claim or failed to overcome qualified immunity. (*Id.* at 9-42.)  The magistrate judge also recommends that the Court deny Brown's motion to file a proposed witness list.  (*Id.* at 36-37.)

Brown objects to the R&R.  The Court will start with Brown's objections to the magistrate judge's recommendation on the civil conspiracy claim and First Amendment retaliation claims, then turn to Brown's objection regarding the motion to file a proposed witness list.

### A. Section 1983 Civil Conspiracy: Warden Huss

Brown asserts a § 1983 civil conspiracy claim against Defendant Huss.  He alleges that she and Defendants Bott, Allen, VanAcker, Baldini, and Toronjo coordinated an effort to issue more misconduct tickets against inmates who threaten to file PREA grievances. (Compl., PageID.13.)  The magistrate judge recommends that Defendants be granted summary judgment on this claim because Brown fails to prove that two or more persons conspired to injure him.  (R&R 9-12.)

A civil conspiracy is "an agreement between two or more persons to injure another by unlawful action." *Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012).  Naturally, an unlawful conspiracy requires two or more persons.  *See Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017).  The Sixth Circuit has "adopted the general rule in civil conspiracy cases that a corporation cannot conspire with its own agents or employees." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509 (6th Cir. 1991).  "[I]t is the general rule that the acts of the agent are the acts of the corporation." *Id.*  This rule is known as the "intracorporate conspiracy doctrine" and applies to § 1983 civil conspiracy claims. *Jackson v. City of Cleveland*, 925 F.3d 793, 817-19 (6th Cir. 2019).  So as MDOC employees, Defendants are agents of the State of Michigan; as  a result, they are all the same person

under the intracorporate conspiracy doctrine.  Therefore, Brown's civil conspiracy claim fails to create a genuine issue of triable fact unless he can show that an exception applies.

Brown argues that Defendants cannot take advantage of the intracorporate conspiracy doctrine because they acted outside their scope of employment when they issued him the misconduct tickets.  *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839-41 (6th Cir. 1994) (recognizing that there is an exception to the intracorporate conspiracy doctrine where employees of the corporate entity act outside the scope of their employment in participating in the conspiracy).  But to take advantage of this exception, Brown must show that Defendants "acted other than in the normal course of their corporate duties."  *Id.* at 839-40. "The mere 'fact that two or more agents participated in the decision or in the act itself will normally not' suffice. . . ."  *Id.* (quoting *Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir. 1972)).

Brown contends that Defendants acted outside their scope of employment when they issued misconduct tickets to inmates who threatened PREA grievances because such conduct is against MDOC policy.  Not so.  The fact that Defendants used their authority as MDOC employees to cause harm to Brown—even in disregard or violation of MDOC policies—"does not establish the exception to the intracorporate conspiracy doctrine for actions taken outside the scope of employment."  *Hubbard v. Beck*, No. 2:22-cv-223, 2022 WL 17687998, at *8 (W.D. Mich. Dec. 15, 2022); *Saad v. City of Dearborn Heights*, No. 11-10103, 2012 WL 72244, at *3 (E.D. Mich. Jan. 10, 2012) ("Even improper actions fall within the scope of employment where they are connected with the employer's business."); *see also Barrow v. City of Hillview, Ky.*, 775 F. App'x 801, 807 (6th Cir. 2019) (holding that even if plaintiff's

10

allegations of bias were true, complaints by defendants were within scope of employment because they "were made during the course of their working hours, the remarks were connected to the business of the hospital, and they were forwarded to the proper managerial authorities"). Accordingly, Brown's objection is overruled.

The Court will adopt the magistrate judge's recommendation that no genuine issue of material fact exists as to Brown's civil conspiracy claim under section 1983.

## B. First Amendment Retaliation: Program Coordinator Bott

It is generally the case that at the summary judgment stage, the Court must take the plaintiff's version of the facts as true. *See Akima v. Peca*, 85 F.4th 416, 422 (6th Cir. 2023). But where, as here, the record contains "a videotape capturing the events in question," the Court "must adopt a version of the facts that a reasonable jury could accept consistent with the video evidence." *Scott*, 550 U.S. at 378-80; *Akima*, 85 F.4th at 422.

The magistrate judge accepted Brown's version of events regarding his encounter with Bott on June 12, 2019, as true. The R&R adopts the fact that Bott "was staring at [Brown's] chest in a voyeuristic manner." (R&R 16.) And that Brown was allegedly "sitting sideways at the bars on top of his two footlockers and was unable to escape Bott's glare." (*Id.*) Plus Brown's allegation that he "grabbed a sheet from his bed to start to cover the bars across the front of his cell" to break Bott's glare. (Compl. ¶ 15.)

This Court, when reviewing the videotape footage that captured this encounter, finds, however, that a reasonable jury could not accept these allegations as they are not consistent with the video. Indeed, the video has no sound, so the Court cannot establish what was said. But the video contradicts any notion that Bott *stared* at Brown in a voyeuristic manner. (*See*

11

Video, Ex. G, 12:56:46-1:00:35.)  The video does not show that Brown grabbed a sheet from his bed to cover the bars of his cell, either.  (*See id.*)  The video further shows standing in front of Brown's cell, keeping his head down, reading from the grievance, looking up from the grievance—occasionally—to talk to Brown, not to *stare* at him.  (*See id.*)  What's more, the video shows Brown sticking his hand through the bars of his cell numerous times, pointing at the grievance Bott held in his hands.  (*See id.*)  Consequently, the Court determines Brown's version of the encounter is discredited by the video so that no reasonable jury could believe the version that Bott stared or glared at him.  *See Scott*, 550 U.S. at 381-82.

Judging the matter on that basis, Bott did not violate the First Amendment.  To state a claim for First Amendment retaliation, Brown must show: "(1) that he was engaged in protected conduct; (2) that [Bott] took an adverse action against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that the protected conduct caused the adverse action, at least in part."  *Susselman v. Washtenaw Cnty. Sheriff's Off.*, 109 F.4th 864, 871 (6th Cir. 2024).  As to the first element of a First Amendment retaliation claim—protected conduct—"[a]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf."  *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).  But "the right to file grievances is protected only insofar as the grievances are not 'frivolous.'"  *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (quoting *Herron*, 203 F.3d at 415).

A grievance is frivolous if it abuses or manipulates the grievance system.  *Id.* (citing *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012)).  An "inmate cannot immunize himself

from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claim[] that everything that happens to him is retaliatory." *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002). So an "obviously meritless prisoner grievance[]" like one that protests a "non-invasive pat down, *Ziegler v. Michigan*, 90 F. App'x 808, 810 (6th Cir. 2004)" would be deemed frivolous. *Brown v. Bott*, No. 21-2834, 2022 WL 3449219, at *3 (6th Cir. June 22, 2022).

Here, Brown accuses Bott of "staring at him in a voyeuristic manner." (Compl. ¶ 10.) According to 28 C.F.R. § 115.6, voyeurism is defined as an invasion of privacy for reasons unrelated to official duties, "such as peering at an inmate who is using a toilet in his or her cell to perform bodily functions; requiring an inmate to expose his or her buttocks, genitals, or breasts; or taking images of all or part of an inmate's naked body or of an inmate performing bodily functions." Considering the video evidence, Bott was clearly not staring or "peering" at Brown unrelated to his official duties. And when viewing all remaining allegations in a light most favorable to Brown: (1) Brown was washing his white laundry with no shirt on; (2) Brown was uncomfortable with his body; (3) Brown was uncomfortable with Bott being outside his cell in light of him having no shirt on; and (4) Bott had made comments like "Man, look at the Boobs on that guy" to other inmates, the Court finds Brown's grievance against Bott frivolous. (*See* Compl. ¶¶ 8-15.) Brown fails to show a genuine issue of material fact that Bott invaded Brown's privacy to the extent of peering at him when he was performing bodily functions or required Brown to show his buttocks or genitals. Thus, Brown engaged in no protected conduct when he threatened to file and filed a PREA grievance against Bott for this encounter.

13

## C. First Amendment Retaliation: Corrections Officer Allen

Brown alleges that Allen retaliated against him in violation of the First Amendment twice.  First, when Allen required Brown to move from his first-floor cell to the second floor because Brown filed and threatened to file a PREA grievance against Bott.  (*See* Compl. ¶ 23.)  Second, when Allen "shook down" Brown's cell and destroyed his belongings because he filed a PREA grievance against Allen for moving him to another cell.  (*See* Compl. ¶ 35.)  The magistrate judge recommends that the Court find that Brown's first alleged instance of retaliation lacks merit since being moved to a different cell does not constitute adverse action.  (R&R 27-29.)  The magistrate judge finds, however, that Brown's second alleged instance makes out a prima facie case of retaliation.  (*Id.*)

This Court agrees with the magistrate judge's *conclusion* regarding Brown's first alleged instance of retaliation by Allen.  As noted, to establish a claim of First Amendment retaliation, Brown must show that he engaged in protected conduct.  *King*, 680 F.3d at 694.  The protected conduct Brown relies on is his grievance against Bott arising from the June 19 encounter.  But the Court found that grievance was frivolous.  And threatening to file or filing frivolous grievances does not constitute protected conduct under the First Amendment.  *Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009).  Brown, therefore, did not engage in protected conduct when he threatened and filed his grievance against Bott.  So he fails to establish a prima facie First Amendment retaliation claim against Allen regarding the cell move.[2]

---

[2] The magistrate judge recommends summary judgment be granted on this claim because a cell-move does not constitute adverse action for First Amendment retaliation purposes.  The Court rejects that line of reasoning.  Generally, an adverse action does not arise from being moved to a different cell.  *See Lewis v. Stoddard*, No. 1:17-cv-

The same cannot be said for Brown's second assertion of retaliation.  Brown alleges that he filed a grievance against Allen resulting from the cell assignment.  (Compl. ¶¶ 30, 34-35.)  On July 5, 2019, after Brown filed his grievance relating to the cell move, Allen allegedly "shook down [Brown]'s cell," throwing Brown's eyeglass cleaning cloth and fingernail clippers in the toilet, placing his "rusty bottomed footlocker" on his bed, putting his sheets and blankets on the floor and around his toilet, leaving footprints on them, tossing his toothbrush on the floor, knocking his TV off its stand, and spilling a cup of water on top of his legal paperwork and typewriter.  (*Id.* ¶ 35.)  Afterward, Allen allegedly stopped by Brown's cell and said, "keep filing PREAs bitch."  (*Id.* ¶ 36.)

The magistrate judge correctly determined that Brown alleged a prima facie First Amendment retaliation claim regarding this incident.  Brown engaged in protected conduct when he filed the grievance against Allen for moving him to a second-floor cell, which was covered in fecal matter. Allen also denied Brown cleaning supplies to clean the cell.  Allen took adverse action against Brown when he allegedly destroyed Brown's belongings.  Further, a causal connection exists between the protected conduct and adverse action because Allen allegedly told Brown shortly after he damaged Brown's property: "keep filing PREAs bitch."

---

100, 2017 WL 942156, at *12 (W.D. Mich. Mar. 10, 2017); *LaFountain v. Harry*, 716 F.3d 944, 949 (6th Cir. 2013) ("Cell assignments are a normal part of prison life, and thus typically do not amount to an adverse action," absent extraordinary circumstances.).  That said, in *LaFountain*, the Sixth Circuit found that forcing a prisoner to cell with a mentally ill prisoner who presented foreseeable risks constituted an adverse action.  716 F.3d at 949.  Accordingly, the Court finds that Brown's assertion that he was reassigned to a cell which was on the second floor in light of his known knee injury, and a cell that was covered with feces, while being handed no cleaning supplies, could constitute adverse action.  *See, e.g.*, *Aaron v. Dyer*, No. 15-CV-11014, 2016 WL 1259098, at *7 (E.D. Mich. Mar. 31, 2016) (being reassigned to a cellmate, who had a well-known history of mental illness that "manifested in extremely unhygienic practices, constitutes an extraordinary circumstances especially if it is true that he was denied supplies to clean his cell"); *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020) ("[T]he fact that a prisoner does not have a constitutional right to a particular prison placement does not doom [the plaintiff]'s case. If the transfer was indeed retaliatory, then [that is a] violation of [his] First Amendment right[s.]"); *Donelson v. Atchison*, No. 14-cv-1311, 2017 WL 5999096, at *5 (S.D. Ill. Dec. 4, 2017).

Accordingly, Brown establishes a prima facie First Amendment retaliation claim against Allen.

### D. First Amendment Retaliation: Lieutenant Baldini

Brown's retaliation claim against Baldini arises out of Brown's grievance against Bott and Bott's related misconduct ticket. The R&R recommends that this Court grant Baldini summary judgment.

Baldini prompted a misconduct hearing to review Bott's insolence misconduct ticket against Brown for threatening to file a PREA grievance to harass and degrade him. (Misconduct Tickets, Ex. 5, PageID.299-300.) During the hearing, Baldini found that Brown presented no "contrary evidence," and the report and grievance supported the misconduct charge. (*Id.*) Thus, Baldini found Brown guilty of insolence. (*Id.*) And if a prisoner is found guilty of insolence, the hearing officer must determine the appropriate sanction under MDOC Policy Directive 03.03.105 ¶ EE. (MDOC PD 03.03.105, ECF No. 46-7, PageID.308-09.) Baldini deemed seven days of loss of privileges an appropriate sanction. (Compl. ¶ 20.)

Brown claims that Baldini's sanction constituted First Amendment retaliation. The magistrate judge finds otherwise. The magistrate judge reasons that Brown fails to establish a retaliation claim against Baldini because Baldini sanctioned Brown based on the evidence presented before the misconduct hearing. (R&R 25-27.) In other words, the sanction Baldini issued was not related to Brown's threat to file a PREA grievance against Bott. (*See id.*) The sanction was instead issued because Brown did not present any proof that showed his threat directed towards Bott concerning the PREA grievance was *not* meant to harass or degrade

him.  (*See id.*)  The magistrate judge, thus, concludes Brown cannot make a prima facie retaliation claim against Baldini because the adverse action was not motivated by Brown's protected speech.  (*Id.*)

The Court agrees with that reasoning and conclusion.  Baldini sanctioned Brown not because he threatened to file a PREA, but because Brown did not submit any evidence to prove otherwise.  Moreover, the grievance that Brown relies on for the protected speech prong was frivolous, so it cannot form the basis for his retaliation claim against Baldini.

Brown objects, arguing that Baldini did not abide by MDOC policy when he issued sanctions.  Brown first contends that Baldini failed to follow Policy Directive ¶ NN, which states, "[t]he reviewing officer . . . *may* pull a misconduct report which s/he determines to be inappropriate but shall first discuss it with the reporting staff person."  (MDOC PD 03.03.105, PageID.310) (emphasis added).  The "may" in ¶¶ NN permits reviewing officers like Baldini to pull a misconduct report.  But nowhere does ¶ NN *require* reviewing officers to pull a misconduct report.  So Baldini was not required to discuss the report with Bott before issuing sanctions.

Brown also argues that Baldini did not find Brown guilty by "a preponderance of the evidence."  (MDOC PD 03.03.105, PageID.310.)  Not quite.  Baldini made his finding of guilt based on what was provided to him during the hearing.  And the evidence that was provided supports his finding of guilt by a preponderance of the evidence.  The misconduct report does not contain the allegations that Brown raises before the Court; it instead merely provides that Bott discussed with Brown a grievance Brown had filed against an MBP librarian.  (Misconduct Tickets, Ex. 5, PageID.299-300.)  There is no mention of staring,

voyeurism, or any sexual conduct.  Nor does Brown allege or provide evidence that the report has any mention of impermissible conduct.

The Court will adopt the magistrate judge's recommendation that no genuine issue of material fact exists as to whether Baldini retaliated against Brown in violation of the First Amendment.

### E. First Amendment Retaliation: Brandon VanAcker

Brown's retaliation claim against VanAcker stems from an allegedly false, retaliatory misconduct report VanAcker filed against Brown.  Brown alleges that he asked VanAcker for a PREA grievance to file against Allen because Allen kept retaliating against him. VanAcker "refused to give [Brown] a PREA and instructed [him] that . . . a normal Grievance was appropriated."  (Compl. ¶ 39.)  VanAcker then allegedly issued Brown an insolence misconduct ticket for requesting a PREA grievance to file against Allen (*Id.* ¶ 40.)

Brown engaged in protected conduct when he requested a grievance to file against Allen.  VanAcker engaged in adverse action when he issued a misconduct ticket against Brown.  A causal nexus existed between the protected conduct and adverse action because VanAcker's misconduct report provided that he "felt" Brown requested a grievance "to degrade his coworker."  (*Id.*)  Thus, Brown has provided a prima facie case of First Amendment retaliation against VanAcker.

### F. First Amendment Retaliation: William Torongo

Brown's retaliation claim against Torongo stems from the alleged false and retaliatory misconduct report by VanAcker.  Brown claims that VanAcker issued Brown a misconduct ticket to retaliate against Brown for filing a grievance against Allen.  (Compl. ¶¶ 39-40.)

18

Torongo reviewed VanAcker's charge.  (*Id.*)  Torongo found Brown guilty of misconduct because Brown waived the right to a hearing and pled guilty to the charge VanAcker accused him of.  (Misconduct Tickets, Ex. 5, PageID.301.)  As a result, Torongo issued Brown a seven-day loss of privileges sanction.  (*Id.* ¶ 40.)  Brown claims that this was retaliatory.  But as discussed, Torongo was required to issue appropriate sanctions if he found Brown guilty of misconduct.  So like Brown's claim against Baldini, the magistrate recommends that this Court grant Torongo summary judgment.

Brown argues that the body of VanAcker's misconduct ticket was clear that VanAcker issued it to retaliate against Brown for filing a grievance.  Thus, Tornogo was required to dismiss it.  The Court rejects this argument by Brown.  With what was presented to Torongo, including Brown's admission and waiver of hearing, Torongo's decision to issue sanctions was not causally related to VanAcker's alleged retaliation.  His decision was based off of what was presented to him at the misconduct hearing.  The Court will adopt the magistrate judge's recommendation that no genuine issue of material fact exists as to whether Torongo retaliated against Brown in violation of the First Amendment.

\* \* \*

In sum, the Court finds that Brown has established a prima facie First Amendment retaliation claim against Allen and VanAcker, but not against Bott, Baldini, or Torongo.  The Court also finds that Brown fails to establish a prima facie § 1983 conspiracy claim against Huss.

## G. Qualified Immunity

Defendants raise qualified immunity as a defense to Brown's constitutional claims. Qualified immunity involves a two-step inquiry, which the Court can address in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The Court must determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiff show that a constitutional violation occurred. *Saucier*, 533 U.S. at 201. If so, the right that was violated must have been clearly established at the time. *Id.*; *see also Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996). Only then can the claimant overcome the qualified immunity defense.

As for the clearly established prong, the right in question must have been so clearly established "at the time of the challenged conduct" that "every reasonable official would have understood that what he [was] doing violate[d] that right." *Al-Kidd*, 563 U.S. at 741; *Campbell v. Riahi*, 109 F.4th 854, 860 (6th Cir. 2024) (citing *Dist. Of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). This determination is guided by the decisions of the United States Supreme Court, and the Sixth Circuit Court of Appeals. *Carver v. City Cincinnati*, 474 F.3d 283, 287 (6th Cir. 2007); *see Andrews v. Hickman Cnty., Tenn.*, 700 F.3d 845, 853 (6th Cir. 2012).

### 1. Constitutional Violation

The Court concludes that Brown has failed to prove a constitutional or statutory violation against Huss, Bott, Baldini, and Torongo. But he has proved a prima facie constitutional violation against Allen and VanAcker. So the next step is whether the right Brown alleges these Defendants violated was clearly established at the time.

20

## 2. Clearly Established Right

"[T]he First Amendment bars retaliation for protected speech," which is what Brown alleges occurred here.  *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998).  That being the case, the Court asks whether any reasonable official would have understood that Brown's speech was protected, and thus that the official could not retaliate against him.  *See McElhaney v. Williams*, 81 F.4th 550, 557 (6th Cir. 2023).  In identifying clearly established rights, the claimant must identify a case with facts "similar enough" that would bind a Sixth Circuit panel:

> In identifying clearly established rights, the Supreme Court warns lower courts against defining them "at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). The claimant must show that the right's contours were "sufficiently clear" such that "every reasonable official would have understood" that the officer's actions violated it. *Id.* at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). That usually means the claimant must identify a case with facts "similar enough that" it "squarely governs this one," *Lee v. Russ*, 33 F.4th 860, 863 (6th Cir. 2022) (quotation omitted), what amounts to "on-point caselaw that would bind a panel of this court," *Bell v. City of Southfield*, 37 F.4th 362, 368.

*Moore*, 126 F.4th at 1167-68.  For example, in the Fourth Amendment context, a general rule like an arresting officer's force must be "objectively reasonable," "offer[s] little guidance" to officers apart from "obvious violations."  *Id.*

Similarly, a general rule like an inmate has a First Amendment right to file or even threaten to file *non-frivolous* grievances against prison officials, offers little guidance to prison officials except for obviously non-frivolous grievances.  *Herron*, 203 F.3d at 415; *Pasley*, 345 F. App'x at 985.  The Sixth Circuit has provided more guidance when it held that grievances designed to be "[a]busive or manipulative" are frivolous.  *Maben*, 887 F.3d at 264-65.  The

Sixth Circuit has also *suggested* that a grievance may be frivolous if the underlying grievance itself was de minimis.  *Id.*  For instance, a grievance that is related to basic necessities, like food, is not de minimis.  *Id.* ("[W]e refuse to say that a complaint about one of the major requirements of life is a frivolous or *de minimis* grievance.").  The court has found the following grievances as de minimis, as well: when a prisoner complained that a corrections officer should "not be able to conduct a non-invasive pat-down search" of her, *Ziegler v. Michigan*, 90 F. App'x 808, 810 (6th Cir. 2004); when a prisoner complained that he was required to use a typewriter rather than a computer, *White-Bey v. Griggs*, 43 F. App'x 792, 794 (6th Cir. 2002); and when a prisoner complained that he had been subject to verbal abuse, *Scott v. Kilchermann*, 230 F.3d 1359, 2000 WL 1434456, at *2 (6th Cir. 2000).  *Id.*

The question then becomes, would a reasonable official in Bott or Allen's shoes have been on notice that the grievances Brown filed were non-frivolous, specifically, Grievances MBP 190629466 and MBP 19090136527B.  The Court finds that a reasonable official would have been put on fair notice of the second grievance (**MBP 19090136527B**), but not the first (**MBP 190629466**), was non-frivolous.

### (a) Grievance MBP 190629466

This grievance alleges that Bott stared at Brown in a voyeuristic manner.  The video clearly contradicts this allegation.  But even if it didn't, it was not clearly established by 2019 whether Bott's conduct constituted voyeurism.  Therefore, whether this grievance wasn't frivolous was not clearly established.

Brown argues that *Maben* illuminated enough light on this issue that it was clearly established that his grievance against Bott was not frivolous.  But *Maben* did not clearly

establish Brown's right in this context. *Maben* dealt with a grievance based on a necessity of life, food. That court had nothing to say about voyeurism. Nor do any of the cases that Brown cites in his objections—*Ziegler*, *White-Bey*, or *Herron*—constitute a case with facts "similar enough" that would bind a panel of this court. It wasn't until 2022 that the Sixth Circuit ruled on this issue. Obviously, the Sixth Circuit's appellate review was not available to Defendants in 2019.

The Court, moreover, cannot find any other case before 2019 that would have put a reasonable official on notice. Indeed, the PREA regulations define voyeurism. However, no court had analyzed that definition in this context. The Court, therefore, adopts the magistrate judge's recommendation that a reasonable official would not have been put on notice that Grievance MBP 190629466 was non-frivolous. What this means is that any retaliation Brown faced because of filing or threatening to file a grievance against Bott for the June 19 encounter cannot satisfy the protected conduct element.

### (b) Grievance MBP 19090136527B

This grievance alleges Allen moved Brown from a base-floor cell to a second-floor cell because he filed a PREA grievance against Bott. Brown complains that the second-floor cell required him to traverse stairs even though Allen knew he had a knee injury. Furthermore, he complains that the second-floor cell was covered with fecal matter, and he was handed no cleaning supplies.

This grievance was not frivolous, and a reasonable officer in 2019 would or should have known that it wasn't. By 2019, it was clearly established that a grievance that complains about being retaliated against for filing an earlier grievance is not frivolous. *Maben*, 887 F.3d

23

at 264 (finding that pursuing a grievance about prison conditions and seeking redress of that grievance qualified as protected conduct); *see Walton v. Gray*, 695 F. App'x 144, 145 (6th Cir. 2017); *Lappin*, 630 F.3d at 472.  Moreover, this is one of those "obvious" cases where an official would be put on fair notice that a prisoner complaining about a new cell that was covered in fecal matter and was denied cleaning supplies is not frivolous.  Thus, the Court finds that Allen and VanAcker had fair notice that Brown engaged in protected conduct when he filed Grievance MBP 19090136527B.

## H. Proposed Witness List

The magistrate judge recommends that the Court deny Brown's motion for a proposed witness list.  Brown requested leave to file a proposed witness list so he can "gain approval from MDOC to initiate contact" with Troy Allen Hite, a legal writer, and Joshua Mosher, another legal writer.  (Mot. Proposed Witness List, PageID.703-04.)  Those two individuals allegedly have information on Bott's behavior of staring at larger set men.  (*Id.*)  Brown argued that he could not contact either of them without a proposed witness list due to the MDOC's Policies.  (*Id.*, PageID. 702-05.)  The magistrate judge found that Brown's motion for a proposed witness list was not proper because the discovery process is the correct avenue to obtain information.  (R&R 36-37.)

Brown objects.  He argues that the MDOC denied his application for prisoner-to-prisoner legal mail, as this Court has no record of a witness list being filed.  Therefore, he needs a proposed witness list filed with the Court to show the MDOC that he needs to contact those legal writers.

24

The Court will adopt the magistrate judge's recommendation in denying Brown leave to file a proposed witness list. The magistrate judge correctly found that the correct process for Brown to gather information from Mosher and Hite is the discovery process. Further, Brown has provided no caselaw or rule establishing that he needs a proposed witness list to contact Mosher or Hite. Thus, Brown's objection is overruled.

## I. Sur-reply Brief

The magistrate judge recommends that the Court grant Defendants' motion to strike Brown's sur-reply brief because Brown failed to obtain the Court's leave to file the sur-reply. (ECF Nos. 111, 114.) Brown fails to respond. (R&R 37-38.) Further, under Western District of Michigan Local Civil Rule 7.2(c), Brown was required to obtain leave from this Court to file this additional reply. He did not; thus, the Court will adopt the R&R.

## IV. CONCLUSION

For these reasons, the Court will adopt and reject in part the R&R.

**IT IS ORDERED** that the magistrate judge's R&R is **ADOPTED IN PART** and **REJECTED IN PART**. The Court adopts the magistrate judge's recommendation that Brown be denied leave to file a proposed witness list (ECF No. 109), Defendants' motion to strike Brown's sur-reply be granted (ECF No. 114), Defendants Bott, Baldini, and Torongo's motion for summary judgment be granted regarding Brown's First Amendment retaliation claims against them, and Defendant Huss's motion for summary judgment be granted regarding Brown's 42 U.S.C. § 1983 civil conspiracy claim against her. (ECF No. 97.) The Court, however, denies the magistrate judge's recommendation that Defendants Allen and

VanAcker be granted summary judgment regarding Brown's First Amendment retaliation claims against them.  (ECF No. 118.)

    **IT IS FURTHER ORDERED** that the Court grants Brown's motion to file a reply in support of his objections as Brown was never required to obtain leave to file this in the first place.  (ECF No. 122.)

Date:  August 6, 2025                    /s/ Paul L. Maloney
                                         Paul L. Maloney
                                         United States District Judge